*Court of Common Pleas, Dauphin County, May 21st, 1866.*

MILLER ET AL. *v.* HERSHEY ET AL.

A fulling-mill, which was repaired, a new shed erected alongside of it, and new machinery placed in it to turn it into a grist-mill, is not such a new building as will subject it to a mechanics' lien for the work done or materials furnished.

The question as to whether a building is an old one repaired, or a new one erected, is a question of law for the court.

BY THE COURT.—The facts in this case are undisputed, and raise a single question of law. Is the building in which the machinery furnished by the plaintiffs was placed the subject of a mechanic or materialman's lien? It is described as " a two-storied stone grist-mill, thirty-three feet more or less front on the east, and thirty feet deep, with a water-house at the rear, ten feet wide and thirty-six feet long, with the ground and appurtenances thereto belonging, situate in Derry township, Dauphin county, adjoining," etc. The evidence shows that the stone building described was on the ground many years before, of the size and description stated in the lien, and had been built and used for a fulling-mill. The owner, Hershey, wished to convert it into a grist-mill, and for that purpose built a new frame and stone shed adjoining, stone to the surface of the ground, frame for one story higher, ten feet wide by thirty-six feet long. This was constructed for the purpose of containing the water-wheel and some other portion of the machinery for the grist-mill. One side of the old mill was used for the shed. A new roof was put on the old mill; the rafters and lath remained as before, but the roof extended down so as to cover the new shed part. A new floor was placed in the old mill, next the ground, and also on the second story, laid on the old joists, new ones having been placed under the floor next the ground. The shed was built for the purpose of holding the new water-wheel and a portion of the works for the grist-mill. Part of the iron machinery procured for the flouring-mill was placed within the new shed building, the residue thereof in the old stone mill. The wheel of the fulling-mill was some twenty-two feet high, and stood within the old stone building. The wheel for the flouring-mill was twenty-nine feet high, and was outside of the walls, and under the new shed, as was also the master cog-wheel, and at least one large pinion or gudgeon.

The lien is not filed for work done at or within the new shed, but generally against the " stone grist-mill," for work and machinery placed therein. It is called and treated by the materialman as a new grist-mill. Is it such in contemplation of law? It certainly never was a grist- or flouring-mill until the new iron machinery, furnished by the plaintiffs, was placed in it; but it

was not a new, but an old stone mill, though of a different character, and used for another purpose. Does the change in the use and the alterations in the building make it a *new mill*, so as to subject it to a lien under the law? Had the claim been made for work done, or materials furnished in the erection of the new shed adjoining the mill, and specially filed against that building, it would have come within the case of Harman *v.* Cummings and Wife (7 Wright, 322), and those reported in 2 Barr, 79, 4 Casey, 156, and 11 Casey, 348. It describes that shed as connected with the main building, but these articles were not furnished for it in particular, but consisted of materials for mill work in the stone mill and shed, without any specification of what was to go into the one or the other; the machinery was designed for the entire mill. Would the stone mill pass as an incident to this shed, or was not the latter rather an appurtenance to the former? A kitchen built for the use of a house is held to be subject to a mechanics' lien in Lightfoot *v.* Krug (11 Casey, 348), and Pretz & Gausler's Appeal (Ib. 349), and the law must be considered as so settled. But whether the main house would pass by a judicial sale of the kitchen on the lien filed, as appurtenant thereto, as intimated in one of those cases under the strength of that of Nelson *v.* Campbell (4 Casey, 156), is certainly somewhat problematical. We have, on the other hand, the case of Summerville *v.* Wann (1 Wright, 182), which decides that where an engine or other new machinery was placed in a mill, with a view of driving it by steam, when it had formerly been propelled by water power, but the frame of the mill was not changed, yet a new shed was erected of sufficient size, and for the purpose of covering the steam works, it did not constitute it a new mill so as to render valid a lien filed for the engine and machinery furnished.

The shed built for the purpose of covering the steam works was not there treated as a new erection, but merely as an appurtenance to the old mill-house, and it is a little difficult to draw a distinction between such a shed and one constructed to cover a water-wheel; if the one is appurtenant to the main building, the other must be so likewise. True, the main contest appeared to be as to the act of 1856, extending to such a case, and it was contended that the statute gave a lien for the machinery without regard to the character of the building in which it was placed, but the court declared that there is no lien where new works of the kind described in the act go into an old building, that the lien is *for* the machinery furnished, and not *on* it. The lien must be on the ground or building, and they must come within the act of 1836. I decided the same principle in a case which arose soon after the passage of the act, where the party who furnished a steam-engine which was placed in an old mill, claimed a lien on the engine. The claimant was allowed no part of the money arising from a sheriff's sale

[Miller et al. *v.* Hershey et al.]

of the property. Many alterations were made in the old mill buildings, the walls remaining as before, but new shingles were placed on the old rafters; so as to constitute in the main a new roof. An entire new floor was laid below, and a new one above except the supporting joists. Yet acording to adjudicated cases, this was but repairing an old building. The changes in the struc-. ture were less extensive than in Landis's Appeal (10 Barr, 379). There was a new front wall, the conversion of a dwelling into a storehouse, or the reverse, or a small factory into a large and extensive one, with an alteration of the machinery or propelling power, without enlarging the building, and cites in support the opinion of Judge Kennedy, in 5 Rawle, 307. The change of a carpenter's into a blacksmith's shop would not be less marked than that of a fulling- into a flouring-mill. Yet if the external structure remained the same, we cannot believe that a lien could be created by the change of purpose. In the mill all of the old works used for fulling cloth must be removed, and new ones of a different character supplied. In the shops the alterations are equally necessary, though generally less expensive. The same might be said of the stable converted into a wagonmaker's shop, or the converse, without any alteration in the external edifice. From the whole current of adjudicated cases, it would seem that there must be an essential and marked change in the external structure of a building, and not merely a conversion of it to a different use in order to afford the mechanic or materialman a lien for his labor or materials. In this case the new roof, floors, and shed did not, in our opinion, convert the old stone mill into a new building, nor would the change of purpose have that effect so as to give the materialman a lien for his machinery supplied for converting the fulling- into a grist-mill. The old building remains intact, and it is on it and the soil subservient thereto that the law gives the lien, not on the materials supplied, which went indiscriminately into the whole structure, the old stone mill-house, as well as into the new shed, and what went into the one building or the other is not distinguished either in the lien filed or the evidence on the trial, except, possibly, as to one or two items mentioned by the witnesses.

The facts in this case being entirely undisputed, whether a new building or not is a question of law, and not as intimated in some of the cases one of fact to be submitted to a jury. If so to be determined, one half of the liens filed against a building may be sustained, and the residue overturned or rejected, according to the variable opinions of jurors on the same state of facts. This case was not so submitted, but the instruction was given to find a verdict for the plaintiffs, and the point was reserved for the decision of the court. We now determine on the reserved question that

[Ball's Administrator, for Use of Foster, v. Nicholson's Administrator.]

the plaintiffs are not entitled to recover, and render judgment in favor of the defendants *non obstante veredicto.*

AFFIRMED BY THE SUPREME COURT (59 Penna. 64).

*Miller and Breneman, for defendant.*

(The act of April 4th, 1867, changes the law in the above opinion in Dauphin county.)